IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAZY S RANCH PROPERTIES, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. CIV-22-346-GLJ |
| CEDAR FALLS RANCH, LLC, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss [Docket No. 9] and Motion to Strike Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 24]. This case arises from a real estate transaction between Defendant Cedar Falls Ranch, LLC ("Defendant") and Lazy S Ranch Properties, LLC ("Plaintiff"), as to whether an earlier Settlement Agreement between Defendant and BKEP Pipeline LLC ("BKEP") extinguished Defendant's obligation for certain work to be completed on the property, namely, having boulders crushed by a third party. Plaintiff's sole cause of action is a breach of contract claim for failure to meet Defendant's alleged duty to disclose the unrecorded Settlement Agreement. For the reasons set forth below, Defendant's Motion to Dismiss [Docket No. 9] and Motion to Strike Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 24] are hereby GRANTED.

1

# BACKGROUND

In 2013, Defendant granted and recorded an easement ("Easement") to BKEP Pipeline, LLC allowing BKEP the right to install and operate an oil and gas pipeline through a portion of the property and obligating it to, *inter alia*, crush all unearthed rock to a diameter of three-quarters of an inch or less. *See* Docket No. 6, p. 2. On September 30, 2014, Defendant and BKEP signed a Settlement Agreement relieving BKEP of its obligation to crush the unearthed rock. *See* Docket No. 9- 2. Defendant did not record the Settlement Agreement and, three years later, sold the property to Plaintiff on December 8, 2017. *Id* at 2 and 3. The contract for the sale of the property ("Ranch Contract") between Plaintiff and Defendant required that Plaintiff be furnished with or obtain a title policy and further required that both parties execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, or any other documents required for the closing of the sale and the issuance of the title policy. *See* Docket No. 11-2., p. 5. Additionally, it provided that Plaintiff would take title subject to existing easements. *See* Docket No. 6, p. 3. Defendant contracted with Stewart Title to provide the title policy and, in so doing, provided an affidavit to Stewart Title ("Markham Affidavit") stating, in part, that "there are no outstanding unrecorded leases, deeds, or agreements affecting the land of which the Affiant has knowledge[.]" *See* Docket No. 6, p. 3. Thereafter, a title policy was issued, and the sale closed. *Id.*

# PROCEDURAL HISTORY

Prior to the present action, Plaintiff brought an action against BKEP in Carter County District Court, Oklahoma, Case No. CJ-2019-106 ("Oklahoma Lawsuit"), related

to the "failure" of BKEP to crush the rock pursuant to the Easement. *See* Docket No. 9-5. Subsequently, BKEP added Defendant as a third-party defendant and summary judgment was granted in favor of BKEP against Plaintiff. *See* Docket Nos. 9-6; 9-7. The Oklahoma Court of Civil Appeals affirmed the granting of summary judgment, at least on statute of limitations grounds, and now the Oklahoma Lawsuit is currently before the Oklahoma Supreme Court on a petition for certiorari. *See* Docket Nos. 9, p. 16; 9-8.

Plaintiff filed the present action against Defendant in this Court on December 5, 2022, and filed an Amended Complaint on December 7, 2022. *See* Docket Nos. 2 and 6. In the Amended Complaint, Plaintiff's sole claim of relief is for breach of the Ranch Contract, alleging that Defendant had a duty to disclose the Settlement Agreement and failed to so disclose. *See* Docket No. 6. Defendant then filed the present Motion to Dismiss on January 20, 2023, *see* Docket No. 9, and a Motion to Strike a supplemental brief filed by Plaintiff on March 7, 2023, *see* Docket No. 24. The Court now addresses both motions.

## **ANALYSIS**

As a preliminary matter, the parties request that the Court consider documents beyond the Amended Complaint itself; namely the Ranch Contract, the Markham Affidavit, and the Easement, as well as various pleadings in the Oklahoma Lawsuit. In resolving a motion to dismiss, a court may consider "documents central to a plaintiff's claim and those referred to in the complaint . . . where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005). The Ranch Contract, the Markham Affidavit, and the Easement are each referred to in the Amended Complaint and are central to Plaintiff's claim. *See* Docket No.

3

6. As neither party raises a question of their authenticity, the Court may consider these documents without converting the Motion to Dismiss to a Motion for Summary Judgment. *See Utah Gospel Mission*, 425 F.3d at 1253-54. Similarly, this Court may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *See Hodgson v. Farmington City*, 675 F. App'x. 838, 840-841 (10th Cir. 2017); *see also Pace v. Swerdlow*, 519 F.3d 1067, 1072-1073 (10th Cir. 2008) (finding the federal district court properly took judicial notice of "all the materials in the state court's file."); *Bonney v. Parish Eyeglasses*, 2008 WL 4490011, *2 (E.D. Okla. Sept. 30, 2008) (stating, "[a]dditionally, judicial notice of a state court file for consideration of a motion to dismiss has been considered appropriate without conversion to a motion for summary judgment." (citing *Pace*, 519 F.3d at 1072–73)).

## I. Defendant's Motion to Strike

Plaintiff filed its Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support ("Sur-Reply"), *see* Docket No. 23, without leave of Court. Local rule, LCVR 7.1, provides: "[s]upplemental briefs are not encouraged and may be filed only upon motion and leave of Court." Plaintiff's Sur-Reply clearly falls into the category of a supplemental pleading under LCvR 7.1(e) and is improper because leave was not sought and obtained before it was filed. As such, Plaintiff's supplemental brief is not considered and Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 24] is hereby GRANTED.

## II.  Motion to Dismiss

Defendant moves to dismiss Plaintiff's breach of contract claim, arguing that Plaintiff has failed to state a claim for relief or, alternatively, that it should be dismissed or stayed to avoid claim splitting between an action pending in state court and this action in federal court. *See* Docket No. 9.

### A.  Claim Splitting.

Defendant argues this action is improper claim-splitting because it involves the same parties, the same transaction or occurrence and the same Settlement Agreement. Plaintiff argues that the Oklahoma Lawsuit concerns a wholly separate cause of action from this case. This Court, however, does not need to delve into the specifics of the Oklahoma Lawsuit. The claim splitting argument fails as the Tenth Circuit has held that claim splitting does not apply between actions filed in state and federal court. *See Wyles v. Sussman*, 661 F. App'x 548, 552 (10th Cir. 2016) ("[A] federal court with jurisdiction isn't barred from hearing a suit concerning the same matter as a suit pending in state court.") (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).

### B.  Breach of Contract.

**1.  Applicable Standards Under Fed. R. Civ. P. 12(b)(6).**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-557, 570) (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). This requires a determination as to "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

      Defendant asserts that Plaintiff's Amended Complaint does not state a cognizable claim for breach of contract based on the failure to disclose the Settlement Agreement. Generally, to state a breach of contract claim under Oklahoma law, there must be sufficient factual allegation to support "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach. *Morgan v. State Farm Mut. Auto Ins. Co.*, 2021 OK 27, ¶ 21, 488 P.3d 743, 748 (citing *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001

OK 21, ¶ 33, 24 P.3d 834, 843). Both parties focus on whether a breach occurred.

### 2.     Express Provision

In support of its breach of contract claim, Plaintiff first contends Defendant was obligated to report the Settlement Agreement based on an express provision in the Ranch Contract. Plaintiff, without quoting from or citing to any specific portion of the Ranch Contract, asserts that the Ranch Contract expressly provides that Plaintiff would "take title subject to existing easements of record, including all terms and conditions therein." *See* Docket No 6, p. 3. The Ranch Contract, however, states only that Plaintiff will take "subject to existing zoning ordinances, restrictions, easements, rights of way and N/A." Docket No. 9-3, at 1 § 2(A)(5). The "of record, including all terms and conditions therein" language, alleged in the Amended Complaint, is absent from the Ranch Contract itself. *See* Docket No. 6, p. 3.[1] Generally, "[w]here there is a variance between any material allegation of a pleading, upon which the action or defense is founded, and the exhibits either physically attached to it or incorporated in it by reference, the terms of the exhibits must control." *Eckel v. Adair*, 1984 OK 86, ¶ 4, 698 P.2d 921, 923 *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("When a complaint includes an exhibit '[the exhibit's] legal effect is to be determined by its terms rather than by the

---

[1] A proposed amendment to the Ranch Contract titled "Seller's Counteroffer" would have added the language "Buyer agrees to accept title subject to: (a) utility easements serving the property, (b) building use and restrictions of record, (c) set back and building lines, (d) zoning regulations, (e) reserved and severed mineral rights, and (f) all other easements and rights of way of record together with the Pipeline Easement and Right of Way effective as of November 1, 2017, executed by and between Lazy S Properties, LLC as grantor and Cool Creek Properties, LLC as grantee, which shall not be considered objections for requirements of Title." *See* Docket No. 11-2, p. 30. Whether this language is a part of the contract is irrelevant as it references a different easement between Lazy S Properties, LLC and Cool Creek Properties, LLC.

allegations of the pleader.'") (quoting *Droppleman v. Horsley*. 372 F.2d 249, 250 (10th Cir. 1967)). Here, the Ranch Contract is incorporated by reference, is relied on by both parties and its terms will control. *See* Docket No. 6, p. 2

Under Oklahoma law, "a contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O.S. § 152. "[I]f the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated." *Whitehorse v. Johnson,* 2007 OK 11, ¶ 14, 156 P.3d 41, 47. "The interpretation of a contract, and whether it is ambiguous, is a matter of law for the Court to resolve. Contractual intent is determined from the entire agreement. If a contract is complete in itself and viewed in its entirety is unambiguous, its language is the only legitimate evidence of what the parties intended." *Id.* The Ranch Contract language, "subject to existing zoning ordinances, restrictions, easements, rights of way and N/A[,]" *See* Docket No. 9, Ex, 3, p. 1, is clear and unambiguous as to "existing" easements. The Ranch Contract thus contemplates that Plaintiff will take title subject to easements as they existed at the time of contracting.

In the Amended Complaint, Plaintiff alleges that, before signing the Ranch Contract, it discovered the Easement due to its own investigation. *See* Docket No. 6, p. 2. Additionally, Plaintiff alleges that the existence of this easement was "integral to Plaintiff's ultimate decision" to purchase the property "as the construction of the easement . . . resulted in mounds of rock, substantial in both size and frequency." *Id.* The unambiguous

8

terms of the Easement, however, provide that all of BKEP's obligations regarding the construction of the pipeline, including the obligation to crush the unearthed rocks, should be completed by June 30, 2014, or one year plus 180 days from the date the easement was granted. *See* Docket No. 9-1, p. 7-8. When Plaintiff purchased the property on December 8, 2017, the obligation to crush the unearthed rock was over three years delinquent. *Id.* However, Plaintiff alleges no investigation or due diligence was conducted into why BKEP had not performed this obligation which Plaintiff alleges was "integral" to its decision to purchase. "Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations." *Wyrick v. Campbell*, 1918 OK 1, 170 P. 267, 267 (quoting *S. Dev. Co. of Nevada v. Silva*, 125 U.S. 247 (1888)). Here, Defendant cannot be held responsible for Plaintiff's incomplete investigation, nor can that investigation obligate Defendant to disclose the Settlement Agreement. *See id* at 268. ("The law does not deny its aid in such cases because it looks upon a want of candor and sincerity with indulgence, but because it will not encourage that indolence and inattention which are no less pernicious to the interest of society, and will not relieve those who suffer damage by reason of their own negligence or folly."). Therefore, nothing in the express provisions of the Ranch Contract or Plaintiff's partial investigation imposes a duty on Defendant to disclose the Settlement Agreement.

    **3**    **Affirmative Representations.**

Plaintiff also argues Defendant had a duty to disclose the Settlement Agreement when Defendant represented to Plaintiff in the Markham Affidavit that there were no

9

outstanding agreements affecting the land. *See* Docket No. 6, p. 3. On its face, however, the Markham Affidavit does not represent anything to Plaintiff, as the only "parties" to that affidavit are Stewart Title and Defendant. To overcome this glaring problem, Plaintiff argues that the Markham Affidavit should be read as part of the Ranch Contract. In support of this contention, Plaintiff asserts that the Markham Affidavit was necessary to effectuate the parties' intent regarding the closing of the sale and the issuance of the Title policy and was expressly contemplated by the terms of the Ranch Contract itself. This contention is without merit.

Plaintiff points to the terms of the Ranch Contract that state, in part, "Seller and Buyer shall execute and deliver any notice, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment, or law necessary for the closing of the sale and issuance of the Title Policy." *See* Docket No. 11-2, p. 5. As part of the general real estate transaction, Defendant submitted the Markham Affidavit to Stewart Title for the express purpose of inducing Stewart Title to issue a title policy. *See* Docket No. 11-1, p. 1. In the Markham Affidavit, Defendant states that there are "no outstanding unrecorded leases, deeds, or agreements affecting the land of which the Affiant has knowledge." *Id.* While Plaintiff alleges and it appears this statement is facially untrue, the Markham Affidavit is not a part of the Ranch Contract and does not impose on Defendant a duty to disclose the Settlement Agreement for the reasons discussed below.

    a.    **Documents Concerning the Same Subject-Matter**

Plaintiff argues the Markham Affidavit should be read as part of and incorporated

into the Ranch Contract. In so arguing, Plaintiff relies on *Brake v. Blain*, in which the Oklahoma Supreme Court held that two agreements in writing should be construed together when, "although not executed at the same time, they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other." 1915 OK 178, 49 Okla. 486, 153 P. 158, 160. This case is inapposite to the facts at play in the sale here. In *Brake*, the writings in question involved only the two parties, Brake and Blain. Oklahoma statute provides that "[s]everal contracts relating to the same matters, **between the same parties**, and made as parts of substantially one transaction, are to be taken together." 15 O.S. § 158 (emphasis added). In *Broderick v. Keller*, the Tenth Circuit applied § 158 and held that separate contracts concerning the same matters will not be read as one contract when the additional contract involves different parties. 29 F. App'x. 518, 521-22 (2002) ("This argument fails for the simple and obvious reason that the purchase was to be between defendant and the seller of Bradford Trucking, which in no way involved plaintiff . . . . Although the two agreements may have involved the same matters, they were clearly not between the same parties."). Here, the Markham Affidavit does not even appear to be a "contract". Even if this fact is ignored, the Markham Affidavit was prepared for and delivered to a third party, Stewart Title, not Plaintiff. Although the Markham Affidavit tangentially relates to the Ranch Contract, such involvement is not enough if the parties are not the same. *See Broderick*, 29 F. App'x. at 521-22. Because Plaintiff is not a party to the Markham Affidavit, it cannot be read as part of the Ranch Contract. Therefore, the Markham Affidavit is not a part of the Ranch Contract and cannot create any duty of Defendant that is the basis for Plaintiff's breach of contract claim.

### b. Documents Incorporated by Reference

Alternatively, Plaintiff appears to argue that the Markham Affidavit has been incorporated by reference within the Ranch Contract. The alleged incorporating language states "Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy." *See* Docket No. 11-2, p. 5. The Oklahoma Supreme Court has held that "[a] contract may include a separate writing or portions thereof, if properly incorporated by reference." *Walker v. Builddirect.Com Techs. Inc.*, 2015 OK 30, ¶ 11, 349 P.3d 549, 553 (citing *Cont'l Supply Co. v. Levy*, 1926 OK 449, 247 P. 967, 968 and *Aetna Life Ins. Co. v. Bradford*, 1914 OK 636, 145 P. 316, 318). However, "incorporation will fail when this Court must employ a forced construction to 'construe an ambiguity . . . to import a more favorable consideration to either party than that expressed in the contract.'" *Id.* (citing *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 2014 OK 50, ¶ 13, 330 P.3d 511, 515). The *Walker* Court articulated the standard as follows:

> Under the Oklahoma Law of contracts, parties may incorporate by reference separate writings, or portions thereof, together into one agreement where (1) the underlying contract makes clear reference to the extrinsic document, (2) the identity and location of the extrinsic document may be ascertained beyond doubt, and (3) the parties to the agreement had knowledge of and assented to its incorporation.

*Id.* at 554.

Plaintiff appears to ask this Court to construe the Ranch Contract's reference to possible affidavits as an incorporation of the Markham Affidavit. First, there are no clear

references to the Markham Affidavit, only a generic reference to, *inter alia*, "affidavits" required of the parties by the Ranch Contract. "This oblique reference falls short of this Court's demanding standard." *Id.* (finding that a contract did not properly incorporate the "Terms of Sale" webpage housed on its website where it included the words "Terms of Sale" in quotation marks within the contract). Second, the identity and location of the Markham Affidavit was not ascertained beyond doubt. Indeed, at the time the Ranch Contract was executed, the Markham Affidavit is not alleged to have even been created. Third, the parties to the Ranch Contract did not have knowledge of or assent to its incorporation. Again, it is not alleged that the Markham Affidavit existed at the time the Ranch Contract was executed. Moreover, Addendum B to Defendant's Counteroffer makes clear that the "Contract Documents" included in the agreement were referenced in paragraph 1 of the Counteroffer. Docket No. 9-3, p. 29. The Markham Affidavit is not identified in paragraph 1 of the Counteroffer as a document incorporated into the Ranch Contract. As such, it cannot be alleged that both parties agreed and assented to the Affidavit's inclusion or incorporation as part of the Ranch Contract. Plaintiff cites to no authority, and the Court can find none, which allows the Markham Affidavit to be read as part of the Ranch Contract.

Finally, the terms of the Ranch Contract do not obligate delivery of the Markham Affidavit to Plaintiff. The pertinent language of the Ranch Contract states "Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment or law **necessary for the closing of the sale and the issuance of the Title Policy**." *See*

13

Docket No. 11.-2, p. 5. (emphasis added). Thus, the documents are to be delivered to whatever entity should need them in order to see the sale closed and Title Policy issued. *See Whitehorse v. Johnson,* 2007 OK 11, ¶ 14, 156 P.3d 41, 47. ("[I]f the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated.") (citing 15 O.S. § 154). The Markham Affidavit was not delivered to Plaintiff, but the sale closed and the title policy issued. *See* Docket No. 6. Plaintiff has pointed to no other terms in the Contract, and the Court can find none, which might place Defendant under a duty to disclose the Settlement Agreement to Plaintiff. Without a duty to disclose, Plaintiff can show no plausible breach of contract claim.

### III.    Leave to Further Amend

Finally, although the Court should grant leave to amend freely "if it appears at all possible that the plaintiff can correct the defect," *Triplett v. Leflore Cnty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983), leave to amend may be denied where there is a "showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Plaintiff has already amended the complaint once, *see* Docket No. 6, and has not requested leave to amend further. Based on the foregoing, the Court finds further amendment would be futile and any request to further amend the Amended Complaint will be denied.

## CONCLUSION

Accordingly, the Court finds that Defendant's Motion to Dismiss [Docket No. 9] should be GRANTED. Additionally, Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 24] is hereby GRANTED and Plaintiff's Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 23] is hereby STRICKEN.

IT IS SO ORDERED this 4th day of May, 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**